IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ENID C. FREEMAN, o/b/o, ANTONIA CHANÉL MOYE,<br><br>Plaintiff<br><br>VS.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>Defendant | NO.  5:09-CV-47 (CWH)<br><br>PROCEEDING UNDER 42 U.S.C. § 405(g)<br>BEFORE THE U.S. MAGISTRATE JUDGE |

# **O R D E R**

Plaintiff's mother Enid C. Freeman filed an application for supplemental security income (SSI) on behalf of her minor child, Antonia Chanél Moye, on August 14, 2006, alleging disability due to a heart murmur and behavioral and emotional problems (Tr. 31, 46, 63, 78, 83, 87-88). The application was denied by the Commissioner in initial and reconsideration determinations (Tr. 31-41).  A request for a hearing was filed, and Plaintiff appeared and testified at a hearing on September 4, 2008 (Tr. 42, 184-212).  Plaintiff's mother also appeared and testified at the hearing.  Thereafter, the Administrative Law Judge ("ALJ") issued a hearing decision on September 22, 2008, finding Plaintiff not disabled (Tr. 13-25). Plaintiff then sought review of the ALJ's decision by the Appeals Council, but the Appeals Council denied this request for review in an action dated December 12, 2008, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 4-6).  Plaintiff, having exhausted her administrative remedies, thereafter filed this action in U. S. District Court, seeking review of the Commissioner's decision. This case is now ripe for review under § 1631© of the Social Security Act, 42 U.S.C. § 1383(c)(3).

The parties have heretofore consented for the United States Magistrate Judge to conduct any and all proceedings herein including the ordering of the entry of judgment.  Any appeal from this judgment may, by law, be taken directly to the Court of Appeals of the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court.  28 U.S.C. § 636(c)(3).

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Social Security regulations set forth a three-step process for determining if a child is disabled and, thereby, eligible for disability benefits. See 20 C.F.R. § 416.906, § 416.924; *Shinn o/b/o Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1278 (11th Cir. 2004). If a child is not working and has a severe impairment, the ALJ will then determine whether he has an impairment that meets, medically equals, or functionally equals the listings. See 20 C.F.R. § 416.924(d). If the child's impairments do not meet the duration requirement, or do not meet, medically equal, or functionally equal the listings, then he is not disabled. See 20 C.F.R. § 416.924(d)(2).

A claimant has the burden of proving the existence of an impairment or combination of impairments that meet or equal the criteria for one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To meet a Listing, the claimant must have a diagnosis included in the Listings and provide medical reports documenting that the condition meets the specific criteria of the Listing and the duration requirement. See *Shinn*, 391 F.3d at 1279.

A child's functional limitations will be evaluated in the following six broad functional areas, called domains:

> (1) Acquiring and using information;
> (2) Attending and completing tasks;
> (3) Interacting and relating with others;
> (4) Moving about and manipulating objects;
> (5) Caring for yourself; and
> (6) Health and physical well being.

See 20 C.F.R. § 416.926a(b)(1)(I-vi)(2001). A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. See 65 Fed. Reg. at 54,755-54,756 (codified at 20 C.F.R. § 416.926a (2001)). For each domain, it is required to be determined whether a claimant exhibited marked or extreme limitations. Marked limitations are found when:

> (a) standardized test scores for the child Plaintiff are two standard deviations below the norm for the test.
>
> (b) several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning.

20 C.F.R. § 416.926a(c)(3)(C). An impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. See 20 C.F.R. § 416.926(a); *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891 (1990) (to show equivalency claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment").

The ALJ determined that Plaintiff had "severe" impairments of opposition defiance disorder, heart murmur, mood disorder, and parent/child relationship problem, but that she was not disabled.

*Substantial Evidence*

In the opinion, the ALJ discussed the relevant medical and other evidence of record. Treatment records from the Hospital of Saint Raphael dated 1999 and 2004 show that Plaintiff's growth and development were normal (Tr. 127-128). On October 15, 2006, Dr. Sylvester Ajufo examined Plaintiff and confirmed that she had been born with a heart murmur which would need further evaluation by an EKG. However, he also noted that Plaintiff was not on any medication for this condition or any other (Tr. 148-149). In addition, no significant limitations were noted.

The ALJ also reviewed Plaintiff's school records. School records from 2004 show Plaintiff was on grade level for reading and math (Tr. 129-144). However, later records show that Plaintiff had 11 unexcused absences and 25 unexcused tardies. In fact, the school was so concerned about this attendance, they requested a meeting with Plaintiff and her parent. The ALJ properly noted that such absences would obviously impact Plaintiff's performance in school (Tr. 18).

A teacher questionnaire was completed on November 14, 2006, and was also reviewed by the ALJ in this case (Tr. 18, 150-157). This record showed that Plaintiff had not resolved her problem with attendance. Between August 31st and October 11, 2006, Plaintiff missed class seven times. When she did attend class, the teacher noted that she was disruptive and often separated from the class. The teacher also stated that Plaintiff was impatient and willfully failed to follow instructions.

The ALJ also reviewed and discussed Plaintiff's psychological evaluation by Linda Bojarski, a clinical psychologist, on November 28, 2006 (Tr. 158-161). At that time, Plaintiff's mother stated that Plaintiff had been suspended frequently for not listening, not doing what was asked and for pushing and shoving — in addition to four in-school suspensions. She admitted that she was unable to get Plaintiff to do her homework because of her defiance. Nevertheless, Plaintiff (at that time) was in the sixth grade and had never repeated a grade or been assigned to special classes (Tr. 158-159).

Plaintiff was diagnosed with oppositional defiant disorder as well as mood disorder (Tr. 159). However, it was noted that Plaintiff had received no treatment for any physical or mental disorder and took no medication for her heart murmur and had never been prescribed nor took any psychotropic medication (Tr. 159). In fact, no such medication was prescribed after this evaluation and no significant limitations were noted by Dr. Bojarski. Rather, Plaintiff was noted to enjoy singing, dancing, drawing, playing with babies and her kittens and watching television (Tr. 159). It was also noted that Plaintiff attended church services weekly and had no trouble with all activities of daily living independently (Tr. 159).

On December 8, 2006, a childhood disability form was completed (Tr. 162-167). At that time, the physician and consultant found Plaintiff had less than marked limitations in all areas of functioning. However, the ALJ noted that the evidence did not support even this degree of limitation (Tr. 18). Because Plaintiff had no limitation in the area of acquiring or using information, manipulating objects or caring for herself, the ALJ gave this opinion little weight (Tr. 18).

On March 3, 2008, Dr. John S. Muller performed a psychological evaluation on Plaintiff which the ALJ reviewed and discussed (Tr. 18, 170-176). At that time, Dr. Muller confirmed Plaintiff's oppositional defiant disorder and mood disorder diagnoses and also confirmed that Plaintiff had a parent-child relational problem (Tr. 175). However, Dr. Muller determined that Plaintiff was able to understand and remember instruction and new information at an age appropriate level and did not appear to have any significant difficulties in sustaining attention over time (Tr. 176). He also indicated that Plaintiff's mother appeared to exaggerate some of her statements regarding the child's psychological issues (Tr. 175, 176). In fact, during the examination, Plaintiff related to the evaluator in a friendly and cooperative interpersonal manner, with no outward expression of depression or anxiety (Tr. 173).

5

Dr. Muller noted that Plaintiff had never received any mental health treatment or prescribed any medication for any mental condition (Tr. 176). When Plaintiff's mother stated that she could not afford such treatment, she was directed by Dr. Muller to Riveredge Behavioral Health Center. However, at the time the ALJ issued his decision, there was no evidence to suggest that this advice had been followed (Tr. 18). At the hearing before the ALJ, Plaintiff's mother was again asked if her child had received any mental health treatment at Riveredge or any other program (Tr. 192). Plaintiff's mother evaded the question and only stated "we're…new to the area" (Tr. 192). Upon further questioning, Plaintiff's mother admitted, however, that she had been living in Macon for more than one year (Tr. 192).

In March of 2008, a second childhood disability form was completed (Tr. 177-182). When reviewing this evaluation, the ALJ noted that the findings were more consistent with the evidence. For instance, the consultant found Plaintiff had less than marked limitations in the areas of attending and completing tasks and interacting and relating to others and no limitations in the other areas (Tr. 179-180). However, the ALJ also found that Plaintiff had less than marked limitations in health and physical well-being. As such, the ALJ gave this form moderate weight (Tr. 19).

The ALJ reviewed all this evidence and considered the observation by Dr. Muller that Plaintiff's mother appeared to have a history of exaggerating (Tr. 19). In addition, while Plaintiff apparently left middle school because of behavioral problems, the ALJ noted that Plaintiff was never held back, had no special education, took no medication and had friends (Tr. 19). In addition, the ALJ noted the allegations that Plaintiff experienced hallucinations were not credible, even if the allegation that she damaged property was. (Tr. 19).

In reviewing the ALJ's decision for support by substantial evidence, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. The undersigned finds that the ALJ's decision was based upon substantial evidence, as outlined above.

*New Evidence*

Plaintiff's mother submitted a letter and medical documents to support her claim that Plaintiff's mental disorder and heart murmur require a finding of disability. The records attached to the letter dated October 23, 2009 include: a Patient Referral Form for mental health counseling dated September 15, 2008; a list of prescriptions filled from December 2008 through August 2009; medical records showing a hospital admission and treatment at Coliseum Medical Center for depression on February 22, 2009; and, progress notes showing treatment for depression at River Edge Behavioral Health Center in December 2008, February 2009, and March 2009. (Tab # 14). The records attached to the letter dated November 5, 2009 include: a hospital admission at Macon Behavioral Health System for depression dated October 21, 2009. (Tab # 16). These documents were never before the ALJ, and were not submitted to the Appeals Council.

This evidence, submitted only to the court, may be considered to determine if remand is warranted under sentence six of 42 U.S.C. § 405(g). See *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267-68 (11th Cir. 2007); *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986); *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985). To satisfy the criteria for a remand under sentence six of 42 U.S.C. § 405(g), a plaintiff must establish that (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. See *Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1192.

The relevant question before this Court is whether Plaintiff was "entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999).

The new evidence may show that Plaintiff's condition worsened after the ALJ's decision, which was in September of 2008, but any deterioration would not be relevant to her condition on or prior to the date of the ALJ's decision. *See Wilson,* 179 F.3d at 1279; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). If Plaintiff feels that her condition worsened after the date of the ALJ's decision, she should file a new application. *See Wilson*, 179 F.3d at 1279 n.5; *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).

The new evidence does not warrant remand under Sentence Six. Accordingly, the Commissioner's decision is **AFFIRMED** pursuant to Sentence Four of § 405 (g).

SO ORDERED, this 30th day of MARCH, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE

msd